# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5049 | **DATE** | 7/9/2002 |
| **CASE TITLE** | Staci Treiber vs. Michael Rompala, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion to dismiss (19-1) is granted in part and denied in part. Count II is dismissed. Count III is dismissed with respect to Defendant Wheeling only. Plaintiff's motion for partial summary judgment (14-1) on Count III is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 10 2002 | |
| | Notified counsel by telephone. | | date docketed | 411 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/9/2002 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | 02 JUL -9 PM 4:35 | ETV | |
| | | date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STACI TREIBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 01 C 5049 |
| ) | |
| MICHAEL ROMPALA, in his individual ) | Judge Rebecca R. Pallmeyer |
| capacity, and VILLAGE OF WHEELING, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Staci Treiber, a female police officer employed by the Village of Wheeling, Illinois, claims that her supervisor, Defendant Michael Rompala, engaged in sexual harassment and committed common law battery, illegal seizure, and excessive force in violation of her statutory and constitutional rights. She has filed a three count complaint against two Defendants, the Village of Wheeling and Michael Rompala in his individual capacity. Count I alleges sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In Count II, brought under 42 U.S.C. § 1983, Plaintiff alleges that Defendant Rompala violated her Fourth and Fourteenth Amendment rights to be free from illegal seizure and excessive force. Finally, Count III is a common law battery count against both Defendants.

Defendants have moved to dismiss Counts II and III for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). With respect to Count II, Defendants argue that Rompala did not act under color of law or, in the alternative, that he is entitled to qualified immunity because it is not clearly established that the acts of which Plaintiff complains are constitutional violations. Defendants urge that Count III should be dismissed against Wheeling because it is barred by the Illinois Workers Compensation Act, and that as to both Wheeling and Rompala, Count III is preempted by the Illinois Human Rights Act. The court will also consider Plaintiff's

motion for partial summary judgment on Count III.[1] For the following reasons, Defendants' motion to dismiss is granted as to Count II and with respect to Defendant Wheeling on Count III. Plaintiff's motion for partial summary judgment is denied.

## FACTUAL BACKGROUND

For purposes of a 12(b)(6) motion, the court presumes that the facts alleged in the complaint are true. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). In addition, because Plaintiff has filed her own motion for summary judgment, the court believes it fair to presume the truth of facts she sets forth in her materials in support of that motion.

Plaintiff Treiber has been employed by the Village of Wheeling as a police officer since 1996.[2] (Amended Complaint ("Compl.") ¶ 3.) Defendant Rompala is also employed by Wheeling as a corporal in the police department, a position Plaintiff characterizes as "management." (*Id.* ¶ 4.) Treiber alleges that since at least November of 2000, the Wheeling Police Department has engaged in a practice of gender-based discrimination and that as part of this "pattern and practice," Treiber has been subject to "hugging, touching and use of force . . . , gestures of kissing the Plaintiff's wrist, condescending remarks . . . , and . . . a hostile work environment all based upon [her] gender." (*Id.* ¶¶ 7-10.)

At issue for purposes of this motion are Plaintiff's allegations concerning Defendant Rompala's actions on January 28, 2001. Plaintiff alleges that Defendant Rompala was on duty at the Wheeling police station located at 225 West Dundee Road on that date, acting in his official capacity as corporal of the police department, when he "grabbed the Plaintiff by her arm, twisted

---

[1] Defendants answered and moved for summary judgment on Count I of Plaintiff's complaint, a gender discrimination charge, and the court will consider that motion separately after it is fully briefed.

[2] Plaintiff's own rank on the Wheeling police force is not identified.

2

it, turned her causing serious and permanent injury to her arm."[3] (*Id.* ¶¶ 4, 11, 13.) According to Plaintiff, when Rompala realized that he had injured her, he "kissed the arm in a condescending manner" and "suggested to the Plaintiff that she leave police work and become a teacher." (*Id.* ¶¶ 14-15.) The Wheeling Police Department investigated the matter, but did not "bring and/or authorize criminal battery charges against Rompala despite probable cause to do so." (*Id.* ¶¶ 16-18). On May 2, 2001, Treiber filed a charge with the Equal Employment Opportunity Commission and received a right to sue letter on June 8, 2001. (*Id.* ¶¶ 20-21.)

## DISCUSSION

A motion to dismiss a complaint pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits, but instead tests whether the plaintiff has properly stated a claim for relief. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995). On a motion to dismiss, this court accepts as true all well-pleaded facts and allegations in the plaintiff's complaint, and construes the complaint's allegations in the light most favorable to the plaintiff. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). If it appears beyond doubt that Plaintiff can prove no set of facts in support of her claim that would entitle her to relief, then dismissal is proper. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### I.  Count II § 1983 Violation against Defendant Rompala

Plaintiff claims that Defendant Rompala's actions in January of 2001 deprived her of her right to be "free of illegal seizure and excessive force in violation of the Fourth and Fourteenth

---

[3] In Plaintiff's submissions regarding her motion for partial summary judgment on Count III, the common law battery claim, Plaintiff explained the events in more detail. She claimed that at approximately 7:00 a.m. on January 28, 2001, she dropped off some papers in the watch commander's office where Defendant Rompala and Officer Joseph Schaff were meeting. (Affidavit of Staci Treiber ("Treiber Aff.") at 1, Ex. A to Plaintiff's Memorandum in Support of Her Motion for Partial Summary Judgment, ("Pltf's MSJ").) According to Plaintiff, as she was walking away from Rompala, he grabbed her left arm and twisted it. (*Id.*) Plaintiff asserts that this act violated her constitutional right to be free from seizure and excessive force.

3

Amendments . . . ." (Compl. ¶ 30.) Defendant Rompala moves to dismiss this claim, arguing that no constitutional seizure occurred during the incident, and that he did not act under color of law. Even if the court resolves these issues in Plaintiff's favor, Rompala argues, he is entitled to qualified immunity because there is no clearly established law that could have put him on notice that his conduct violated Plaintiff's constitutional rights. Because Rompala's qualified immunity argument incorporates his substantive defenses, the court will address qualified immunity first.

### A. Qualified Immunity

The doctrine of qualified immunity shields government officials from liability for damages arising from their discretionary acts, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Townsend v. Vallas*, 256 F.3d 661, 672 (7th Cir. 2001). Qualified immunity issues are appropriately considered early in the proceedings so that the time and expense of a trial is avoided if the defense applies. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). In *Saucier*, the Supreme Court set forth the two inquiries this court must make in determining whether Defendant Rompala is entitled to qualified immunity: (1) "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) was that right clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted?" *Id.* at 201; *Sparing v. Village of Olympia Fields,* 266 F.3d 684, 688 (7th Cir. 2001). Although qualified immunity is an affirmative defense, the burden of establishing the existence of a clearly established constitutional right rests with Plaintiff. *Sparing*, 266 F.3d at 688. Defendants argue that Plaintiff has not alleged a constitutional violation. Even if she has, Rompala urges, the law is not clearly established that a police corporal who grabs a fellow police officer's arm while both officers are on duty acts under color of state law to "seize" that fellow police officer for Fourth Amendment purposes. (Defendants' Memorandum of Law in Support of Motion to Dismiss Counts

4

II and II of First Amended Complaint ("Mot. to Dismiss Memo") at 3.) The court will consider each of these issues in turn.

### 1) Did Plaintiff allege a constitutional violation?

#### a. Constitutional Seizure

Defendant argues that Treiber does not properly allege a "seizure" within the meaning of the Fourth Amendment. A seizure triggering the Fourth Amendment's protections occurs when a government actor restrains a citizen's liberty by means of physical force or show of authority. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). The Seventh Circuit has explained that a seizure occurs where there is termination of an individual's movement by a governmental actor "through means intentionally applied." *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998), quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). Reading the complaint in the light most favorable to Plaintiff, she did allege that Defendant Rompala, a governmental actor, "grabbed her by the arm [and] twisted it;" for the time period that his arm held hers, Rompala arguably intentionally terminated her movement. (Compl. ¶ 13.) And to the extent that he twisted Plaintiff's arm hard enough to cause permanent injury and damage, as alleged, this could amount to excessive force. The facts might well establish that Rompala's alleged harsh but brief contact with Plaintiff's arm did not genuinely terminate Plaintiff's movement or restrain her liberty. For purposes of this initial qualified immunity inquiry, however, the court will resolve this issue in her favor.

#### b. Under Color of Law

Defendant Rompala argues that he was not acting under color of law when he touched Plaintiff, and therefore, that she did not allege a § 1983 violation. (Mot. to Dismiss Memo at 3.) Section 1983 protects against misuses of power made possible by virtue of state law and a defendant is liable under that provision only if he engaged in the misconduct under color of law.

5

*Tarpley v. Keister,* 188 F.3d 788, 791 (7th Cir. 1999). The important consideration in determining whether a police officer acted under color of state law is the "nature of the specific acts performed." *Latuszkin v. City of Chicago,* 250 F.3d 502, 505-06 (7th Cir. 2001). Even acts committed while a police officer is on duty are not committed under color of state law "unless they are in some way 'related to the performance of police duties.'" *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990), quoting *Briscoe v. LaHue,* 663 F.2d 713, 721 n. 4 (7th Cir. 1981).

In Defendants' view, Plaintiff has alleged only a simple tort by one employee against another, and has not asserted that the incident was made possible by virtue of Rompala's state authority. (Mot. to Dismiss Memo at 5.) Defendant Rompala compares this case to *Honaker v. Smith,* 256 F.3d 477, 485 (7th Cir. 2001), where the Seventh Circuit held that a mayor did not act under color of law when he allegedly set fire to the plaintiff's house. The Seventh Circuit emphasized that actions by state officials occur under color of state law when they are related in some way to the performance of the official's duties, and concluded that burning plaintiff's house to the ground did not relate to the mayor's duties. *Id. Honaker* represents conduct so far to one side of the spectrum of conduct unrelated to official duties, however, that it does not help the court assess where Defendant Rompala's conduct falls on that spectrum; Rompala's conduct was obviously more closely related to his official duties than the conduct alleged in *Honaker.*

Defendant Rompala also characterizes the incident with Treiber as a "private brawl" comparable to the one in *Vanderlinde v. Brochman,* 792 F. Supp. 52 (N.D. III. 1992). In granting defendants' motion for summary judgment in that case, the court concluded that two firemen who flashed their badges and called themselves "the law" before beating up plaintiff were not acting under color of state law because nothing about the office of fireman either implied or facilitated their law-breaking activities. *Id.* 54-56. Judge Shadur pointed out that just because the defendants had proclaimed themselves "the law" did not make it so, and observed that law enforcement is "not . . . the authorized role of firefighters." *Id* at 53.

6

The instant matter is distinguishable from the *Vanderlinde* case. The complaint alleges that Rompala was a higher-ranking police officer, on-duty and working at the police station when he grabbed Plaintiff's arm. Particularly when drawing all reasonable inferences in the light most favorable to Plaintiff, the court concludes that she alleged conduct during the parties' on-the-job interactions which could have been related to (although perhaps an abuse of) his duties as a higher-ranking police officer. *Cf. David v. City and County of Denver*, 101 F.3d 1344, 1354 (10th Cir. 1997) (police officer's claim of sexual harassment by fellow police officers survived motion to dismiss because if the officers "had supervisory authority over her or in some other way exercised state authority over her," she may succeed on a § 1983 Fourteenth Amendment sexual harassment claim); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 22-23 (3rd Cir. 1997) (summary judgment in favor of police sergeant on sexual harassment charge reversed because, even though he was not plaintiff police officer's official supervisor, his role within the police department's structure afforded him sufficient authority over plaintiff to satisfy the color of law requirement).

In the broadest possible sense, Plaintiff alleged that she was inappropriately seized with excessive force by a state official acting under color of state law. The court will, therefore, consider the second question of the qualified immunity inquiry: whether the right Plaintiff claims was violated was clearly established.

### 2) Was the right clearly established?

To the extent that Defendant Rompala violated Plaintiff's Fourth Amendment right to be free from seizure and excessive force, the court must determine whether it would have been clear to a reasonable officer that his conduct was unlawful in that particular situation. *Saucier*, 533 U.S. at 202. In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To make this determination, the court looks carefully at the conduct at issue,

considering not only the allegations of Plaintiff's complaint, but also, as explained earlier, the materials Plaintiff submitted in support of her motion for partial summary judgment. In those materials, Plaintiff claimed that at approximately 7:00 a.m. on January 28, 2001, she dropped off some papers in the watch commander's office where Defendant Rompala and Officer Joseph Schaff were meeting. (Treiber Aff., Ex. A to Pltf's MSJ.) According to Plaintiff, as she was walking away from Rompala, he grabbed her left arm and twisted it. (*Id.*)

In this court's view, a reasonable officer in Defendant Rompala's position would not have considered that Plaintiff's constitutional rights were in jeopardy when he allegedly grabbed and twisted her arm. Indeed, as the above discussion reveals, it was only with a broad reading and significant deference to Plaintiff that this court was able to characterize the incident as a potential constitutional violation. To invoke a "clearly established" right, Plaintiff need not cite a case identical to her own, but she must demonstrate that in the light of preexisting law, a reasonable officer in Rompala's position would have recognized that his actions violated the law. *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). While Plaintiff alleges contact by a fellow police officer that might amount to a common law battery, she offers no legal precedent showing, or even suggesting, that it is clearly established that Plaintiff's constitutional rights were relevant to this interaction.[4] Defendant Rompala is entitled to qualified immunity on Count II, and Count II is,

---

[4] In her effort to paint this as a § 1983 claim, the court believes Plaintiff has gained far more mileage than is warranted out of two factors: that Defendant Rompala is a police officer, and that he "grabbed" her. This was an altercation between an employee and a co-worker/supervisor. As it happens, both are police officers. An entirely different subset of potential legal claims comes to mind when the alleged state actor/ wrongdoer is a police officer, as compared, for example, with a public school principal. If a public school principal grabbed a teacher's arm, the court doubts the contact would be cast as a constitutional excessive force/seizure claim. Along the same lines, Plaintiff made much of the fact that Rompala allegedly "grabbed" her because grabbing, after all, comports more readily with the understanding of a "seizure" than would a punch, a slap, or a kick.

8

therefore, dismissed.[5]

## II. Count III Common Law Battery

In Count III, Plaintiff alleges that Defendant Rompala's actions in January of 2001 constituted common law battery. She also seeks to hold Wheeling responsible for the battery because Rompala was acting in the course of his employment on behalf of the Village. (Compl. ¶ 6.) Defendant Wheeling moved to dismiss this count as barred by the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1, *et seq.*, and both Defendants have moved to dismiss the complaint as preempted by the Illinois Human Rights Act ("IHRA"). These arguments will be addressed in turn.

### A. Preemption by the Illinois Workers' Compensation Act ("IWCA")

The IWCA ensures that employees may recover from their employers for accidental injuries arising out of and in the course of employment. *Meerbrey v. Marshall Field and Co., Inc.*, 139 Ill. 2d 455, 462, 564 N.E.2d 1222, 1225 (1990). In turn, however, the IWCA provides that it is the exclusive remedy against employers for accidental injuries that occur in the workplace. *Id.*; *Richardson v. County of Cook*, 250 Ill. App. 3d 544, 548, 621 N.E.2d 114, 117 (1st Dist. 1993). All other common law or statutory rights to recover damages are preempted unless Plaintiff alleges that either: (1) The injury was not accidental; (2) The injury did not arise from her employment; (3) The injury was not received during the course of her employment; or (4) The injury is not compensable under the IWCA. *Meerbrey*, 139 Ill. 2d at 463, 564 N.E.2d at 1226.

None of these exceptions is applicable here. Plaintiff makes no serious arguments

---

[5] Considering qualified immunity in the context of a motion to dismiss is somewhat unusual in that, as an affirmative defense, it typically leads to summary judgment under Rule 56, rather than dismissal under Rule 12(b)(6). *Landstrom v. Illinois Dep't. of Children & Family Servs.*, 892 F.2d 670, 675 (7th Cir. 1990). The issue can be disposed of on a motion to dismiss, however, when the allegations of the complaint, taken as true, fail to allege the violation of a clearly established right. *Id.* In that instance, as here, "dismissal for failure to state a claim upon which relief can be granted is proper without additional fact development." *Id.*

9

concerning the second, third, or fourth exception. The complaint itself alleges that Plaintiff's injury arose from and was received during the course of her employment. Nor can Plaintiff allege that her injury would not be compensable under the IWCA; an injury is compensable under the IWCA "if it was sustained during the course of employment and arose from that employment." *Richardson*, 250 Ill. App. 3d at 548.

Plaintiff did argue that her injury was not accidental, invoking the first exception, but in this court's view her argument confuses the significance of that first exception, at least as applied to Defendant Wheeling: Plaintiff observes that the IWCA does not bar employees from pursuing common law claims against co-employees for injuries arising out of intentional torts. (Plaintiff's Response to Defendants' Motion to Strike and Dismiss ("Plf. Resp.") at 8.) She does not, however, address the fact that with respect to a claim against an employer, even intentional torts by employees are considered "accidental" under the IWCA because, from the injured employee's point of view, the injury was unexpected and unforeseeable. *Meerbrey*, 139 Ill. 2d at 463, 564 N.E.2d at 1226. Plaintiff makes no argument, nor do the facts as alleged suggest an argument is available, that would avoid the consequences of the IWCA's exclusivity provisions with respect to her claim against Defendant Wheeling. Count III is preempted by the IWCA as to Defendant Wheeling.

### B.     Preemption by the Illinois Human Rights Act

Both Defendants argue that Plaintiff's battery claim is preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/8-111(c) (2001). (Mot. to Dismiss Memo at 9.) The IHRA preempts state law tort claims where the facts of the case are "inextricably linked" to civil rights violations listed under the IHRA, such as sexual harassment. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 516-17, 639 N.E.2d 1273, 1276-78 (1994). In *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23 (1997), the Illinois Supreme Court clarified that a state tort claim

10

is not "inextricably linked" to IHRA civil rights violations if the plaintiff sufficiently pleads the elements of the tort claim such "that there is an independent basis for the action apart from the [IHRA] itself."

Defendants complain that Plaintiff has not identified which of Defendant Rompala's actions are alleged to constitute the common law battery, but the court has no difficulty sorting this out: Plaintiff alleges that Defendant Rompala grabbed and twisted her arm, causing serious permanent injury. This battery allegation is clearly not "inextricably linked" to any civil rights violation, but rather, states a claim without reference to and independent from, the IHRA. As the Seventh Circuit explained in *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000), "if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish[] the legal duty that the defendant was alleged to have breached,' the IHRA does not preempt a state law claim seeking recovery for it." *Id.*, quoting *Maksimovic*, 177 Ill. 2d at 517, 687 N.E.2d at 23. The conduct alleged here is fully actionable as a battery, wholly apart from whether the same conduct might also be probative of sexual harassment. The motion to dismiss Count II as against Defendant Rompala is denied.[6]

---

[6] Defendants also assert that Plaintiff was required, but failed, to allege an intent to harm. (Mot. to Dismiss Memo at 10.) Defendants cite *Glowacki v. Moldtronics, Inc.*, 264 Ill. App. 3d 19, 22, 636 N.E.2d 1138, 1140 (2nd Dist. 1994) for the proposition that "where the party inflicting injury is not doing an unlawful act, the intent to harm is material." In that case, however, plaintiff alleged that his employers intentionally caused him to come into prolonged contact with certain chemicals that injured him. *Id.* at 20, 636 N.E.2d at 1139. In granting defendant's motion to dismiss, the *Glowacki* court held that because plaintiff did not allege that his employers knew that the chemicals he came into contact with were harmful, and because he did not allege facts to support the allegation that his employers intended to injure him, his claims were barred by the exclusive remedy provisions of the IWCA. Id. at 22-23, 636 N.E.2d at 1141. The decision, therefore, rested on whether or not plaintiff had sufficiently alleged that his employers intended to cause him harm for purposes of the exclusivity provisions of the IWCA, and does not mean that Plaintiff here was required to plead that Rompala intended to harm her. Under Illinois law, a battery occurs when someone intentionally causes harmful or offensive contact with another. *Cohen v. Smith*, 269 Ill. App. 3d 1087, 1090, 648 N.E.2d 329, 332 (5th Dist. 1995). Moreover, Illinois common law claims are subject to federal notice pleading requirements and need only state a short and plain statement showing the pleader is entitled to relief. FED. R. CIV. P. 12(b)(6); *see Cook v.*
(continued...)

11

## III. Plaintiff's Motion for Summary Judgment on Count III

Plaintiff filed a motion for partial summary judgment against both Defendants on Count III, the battery claim. As discussed above, this claim is dismissed as to Defendant Wheeling, but not as to Defendant Rompala. Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Equal Employment Opportunity Comm'n v. Sears, Roebuck & Co*, 233 F.3d 432, 436 (7th Cir. 2000).

Plaintiff's motion for summary judgment on the battery count must fail because there are unresolved disputes of fact. Defendant Rompala rejects Plaintiff's description of the parties' exchange and asserts that he did not "squeeze, bend, twist, or exert any other pressure on her arm, wrist or elbow." (Affidavit of Michael T. Rompala at 7, Ex. 1 to Defendants' Rule 56.1(b)(3) Response.) Rompala further asserts that he and Officer Schaff (who was in the watch commander's office with Rompala and Treiber when the alleged battery occurred), had instructed Plaintiff to leave the room and that when she remained standing between Rompala and Schaff, Rompala merely placed one hand on her elbow and the other above her wrist for no longer than a second to direct her out of the office. (*Id.*) Clearly, a reasonable jury, if it believes Defendant Rompala's version of the events, could find that this contact did not amount to a battery. Moreover, the parties disagree as to the nature or permanency of the physical injury, if any, incurred by Plaintiff. Plaintiff's motion for partial summary judgment on Count III is denied.

---

[6](...continued)
*Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998).

## CONCLUSION

For the above reasons, Defendant's motion to dismiss (19-1) is granted in part and denied in part. Count II is dismissed. Count III is dismissed with respect to Defendant Wheeling only. Plaintiff's motion for partial summary judgment (14-1) on Count III is denied.

ENTER:

Dated: July 9, 2002

REBECCA R. PALLMEYER
United States District Judge